## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

SCOTT McCRAY,

       Plaintiff,

       v.                             Case No. 19-cv-638-pp

ROBERT WILKIE,
Secretary of Veterans Affairs,

       Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (DKT. NO. 9)

Scott McCray is an employee of the United States Department of Veterans Affairs. He has worked at the VA's medical center in Milwaukee, Wisconsin, since March 2004. In May 2019, the plaintiff sued Robert Wilkie, Secretary of Veterans Affairs, alleging that the plaintiff was discriminated against on the basis of his sex and disability and retaliated against for opposing discrimination while working at the Milwaukee VA. The plaintiff further alleges that the agency failed to comply with the terms of a settlement agreement concerning a prior discrimination complaint.

The defendant has moved to dismiss the complaint, arguing that many of its allegations are duplicative of a previous lawsuit the plaintiff filed against the VA, that the plaintiff's breach-of-settlement claim is barred by the doctrine of sovereign immunity and that the plaintiff's remaining allegations do not

1

establish a plausible discrimination or retaliation claim under any theory. The court will grant motion.

## I. Background

The court takes the following facts from the complaint, accepts them as true and draws all reasonable inferences in the plaintiff's favor. See Larson v. United Healthcare Ins. Co., 723 F.3d 905, 908 (7th Cir. 2013) (citing McReynolds v. Merrill Lynch & Co., Inc., 694 F.3d 873, 879 (7th Cir. 2012)).

The plaintiff is a black male who works at the VA; he has worked as a Social Science Program Specialist and as a Mental Health Intensive Case Management Case Manager (MHICM). Dkt. No. 1 at ¶4. He was on active duty in the United States Army from 1981 until 1990, serving in Germany, Kentucky and Alaska and attaining the rank of sergeant prior to discharge. Id. at ¶11. He is decorated, having earned ten medals, including two good conduct medals, two achievement medals and a non-commissioned officer professional development medal. Id. at ¶12. As a result of his military service, the plaintiff sustained physical injuries to his big toes, ankles, knees, lower back, and shoulders. Id. at ¶13. He also sustained mental injuries and has been diagnosed with an adjustment disorder. Id. The plaintiff suffers from ailments unrelated to his military service, including hypertension, arthritis, diabetes, sarcoidosis (in remission), and post-traumatic stress disorder. Id. at ¶14. The plaintiff explains that his physical and mental disabilities have severely

2

impacted his life activities and activities of daily living; he suffers from pain, difficulty concentrating and breathing and extreme fatigue. Id. at ¶¶15-16.

The plaintiff has a bachelor's degree from the University of Wisconsin-Milwaukee in criminal justice and a master's degree in educational psychology/community counseling. Id. at ¶17.

From July 1997 until September 2000, he worked as a readjustment counselor at the VA Medical Center in Milwaukee, Wisconsin. Id. at ¶18. After obtaining his master's degree, the plaintiff worked in private practice as a psychotherapist for a few years before he returned to the Milwaukee VA on March 4, 2004, taking a job as a Social Science Program Specialist and Mental Health Intensive Case Management Case Manager. Id. at ¶¶9, 17–18. At the time of his hire, the plaintiff was classified as a disabled ten-point veteran, meaning he was rated as being at least thirty percent disabled. Id. at ¶10. As a Mental Health Case Manager, the plaintiff provides case management for veterans with severe mental illness. Id. at ¶19. His specific duties include providing counseling, providing support with applications for benefits, in-home visits in at-risk neighborhoods, drug and alcohol counseling, running clinical groups, providing transportation for clinical appointments, and helping with family issues. Id.

Around 2011, Erin Williams—a white female—was hired by the Milwaukee VA as Program Manager; the plaintiff was on the interview

3

committee and participated in the decision to hire her into the position that would make her his supervisor. Id. at ¶¶20. Williams scheduled weekly meetings with her department. Id. at ¶22. During one of the first meetings, she looked at the plaintiff and told him that she did not trust his eyes. Id. The plaintiff responded that he was "just thinking;" Williams allegedly said, "I know you are," then grabbed her sweater and pulled it tight around the front of her body. Id. at ¶23.

About six months after becoming the plaintiff's supervisor, Williams required the plaintiff to go through a peer review because a veteran on his caseload died while the plaintiff was on vacation. Id. at ¶24. Before the peer review started, Williams asked the plaintiff questions about where he received his degree and how he had gotten promoted from GS-7 to GS-11; according to the plaintiff, Williams was implying that she didn't think the plaintiff was performing at the GS-11 level. Id. at 25. The plaintiff says that because he is a Mental Health Intensive Case Management case manager, the peer review should have been conducted by another MHICM case manager. Id. at ¶26. Instead, he alleges, the review was conducted by HUD/VASH, which he indicates is the homeless veterans' program; the review suggested that the plaintiff's care of the deceased veteran was inappropriate and that the veteran

4

should have been relocated from the housing he had at the time of his death. Id. at ¶27.

The plaintiff ultimately was cleared of any wrongdoing; the veteran had died from a drug overdose, not from the heat, as Williams had suggested. Id. at ¶28. The plaintiff then filed an Equal Employment Opportunity (EEO) complaint against Williams, alleging that "his non-African-American co-workers were not subjected to a peer review or criticism regarding the quality of their work" when other veterans had died in their homes. Id. at ¶28. The plaintiff's EEO complaint identified Williams as the official responsible for the discrimination against him. Id. at ¶31. The plaintiff asserts that after he was referred for a peer review, a different veteran died during a week when there was a heat advisory, "and the veteran's white, female case manager was not referred for peer review." Id. at ¶29. The plaintiff relates another situation in which a veteran complained about his care, then burned up his apartment and died; the plaintiff alleges that that veteran's white, female case manager was not referred for a peer review. Id. at ¶30.

While the investigation of his EEO complaint was pending, the plaintiff took a thirty-day leave of absence because the stress of his working environment exacerbated his PTSD. Id. at ¶58. When he returned, the plaintiff asked to be excused from attending meetings facilitated by Williams, partly because he learned that she continued to facilitate meetings "even after mental

5

health management had barred her from facilitating the meetings" and partly because he says that attending the meetings exacerbated his PTSD. Id. at ¶¶58–59. The Milwaukee VA granted his request for about two years; the plaintiff says this "accommodation" "was working and effective, and his program did not suffer due to his absence from the meetings." Id. at ¶60.

It appears that the plaintiff and the Milwaukee VA settled the EEO complaint, possibly in February 2012. See id. at ¶32. As part of that settlement, the manager of the mental health division, Dr. Richard Gibson, promised the plaintiff a promotion to GS-12. Id. The plaintiff sys that Gibson "charged Williams with responsibility for making sure that [the plaintiff] got the promotion." Id. at ¶33. Gibson, however, retired. Id. at ¶34. Williams told the plaintiff that, to get the promotion approved, she had to work with Human Resources to get the plaintiff's position description updated. Id. at ¶35. The plaintiff says that Williams contacted other VA mental health facilities and learned that there "were numerous Social Science Program Specialists around the country." Id. at ¶36. The plaintiff said that Tampa's VA medical center had five Social Science Program Specialists at the GS-12 level. Id. at ¶37. Yet, the plaintiff alleges, Williams repeatedly said that she was having problems with Human Resources about the promotion, so the plaintiff requested a meeting with HR. Id. at ¶38.

In May 2013, the plaintiff attended a meeting with Williams, HR Specialist Tim Gaines, and two other white, female HR staff—Susan Theis and Meryl Brahm. Id. at ¶39. The plaintiff says that Gaines brought out a GS-12 position description " and said 'we can do this right now,' referring to approving the promotion." Id. at ¶40. The plaintiff says that everyone then looked at him, then Gaines said, "well, no this won't work, my mistake." Id. at ¶41. The plaintiff responded by telling HR that "this is not right" and asserting that Williams had been working on the promotion for over a year. Id. at ¶42. The plaintiff indicates that Williams responded, "No, we haven't because there was six months when I was not allowed to talk to you;" the plaintiff says this was a reference to the EEO complaint and the settlement of the complaint. Id.

The plaintiff says that in the end, rather than using a GS-12 position description as a model, Williams used a GS-11 position description and, based on that, asked to have the plaintiff reclassified from GS-11 to GS-12 based on a GS-11 position description; he says that as far as he knows, Williams didn't update or change his position description in any way. Id. at ¶ 43. HR specialist Kim Carriveau refused to reclassify the plaintiff, saying that based on the position description Williams had provided, the plaintiff did not perform work at the GS-12 level. Id. at ¶44.

A few months later, in August 2013, one of the plaintiff's white, female coworkers, Kelly Krause, had taken a position in another department. Id. at

7

¶45. The plaintiff says that in contrast to how Williams had treated him, "there came a time when Krause, Williams and [the plaintiff] were standing in the hallway when Williams told Krause that she would promote Krause to a grade level GS-12 if she would stay in their department." Id. The plaintiff says that Krause declined that offer. Id. at ¶47. The plaintiff says that nonetheless, Williams had Krause's vacant position upgraded from GS-11 to GS-12 by changing the position from a MHICM case manager position to a Social Worker/Coordinator/Supervisor position." Id. The plaintiff says that because Williams included in the qualifications for the position a requirement that the applicant have a social worker degree, the plaintiff wasn't eligible and couldn't apply for the promotion. Id.

After receiving an "outstanding" performance rating for three years, the plaintiff received only an "excellent" rating from Williams on his last performance evaluation for the September 30, 2012 to October 1, 2013 period. Id. at ¶¶ 49–50. The plaintiff asserts that even at his mid-year review for that period he received an outstanding rating. Id. at ¶49. The plaintiff explains that he later learned that the reduced rating was based on two incidents he had with co-workers. Id. at ¶51. The plaintiff describes these two incidents as "the incident with Kiger, identified above in paragraphs 62 through 74, above" and "an incident where a white female claimed that he was being disruptive by being loud in the hallway." Id. (There is no mention anywhere in the

8

complaint—at paragraphs 62 through 74 or otherwise—of anyone named "Kiger" or an incident with such a person.)

On November 3, 2014, the plaintiff again was rated as "excellent," this time for the September 20, 2013 through October 1, 2014 period. Id. at ¶52. The plaintiff notes that while it was Williams who "completed the paragraphs that determined [his] rating for the 2012-2013 employee evaluation," and that Williams was the subject of his EEO complaint and the person who did not promote him despite Gibson's direction, the person who completed the 2013-14 evaluation was Dr. Cheryl Kinsman, his temporary supervisor. Id. at ¶¶55-56. The plaintiff explains that Kinsman became his temporary supervisor due to the "turbulent relationship" between him and Williams, and he says that Williams had been barred from facilitating staff meetings until the plaintiff's EEO "issues were fully resolved." Id. at 57.

The plaintiff asserts that the difference between being rated "excellent" and being rated "outstanding" was significant; employees who receive "excellent" rather than "outstanding" on their performance evaluations receive smaller bonuses for that evaluation period and are less likely to be promoted. Id. at ¶¶ 53–54.

On June 23, 2015, Kinsman told the plaintiff that the Milwaukee VA's medical center director, Robert Beller, and "the powers that be" had decided that the plaintiff had to resume attending the Mental Health staff meetings. Id.

9

at ¶61. The plaintiff says he told Kinsman that going to the meetings exacerbated his PTSD and asked that the "accommodation" of allowing him to skip the meetings be continued; he says Kinsman denied that request and said that his attendance was "good for the team." Id. at ¶62. The plaintiff asserts that no one from VA management ever said that the plaintiff's not attending the meetings created an undue hardship for the VA, and he says no one ever suggested an alternate accommodation like allowing him to appear remotely. Id. at ¶63. He says that his PTSD and other medical conditions worsened as a result of the revocation and denial of his accommodation request. Id. at ¶64.

On June 30, 2015, the plaintiff says he met with Beller at Beller's request, "ostensibly" to discuss a whistleblower complaint the plaintiff had filed. Id. at ¶65. The plaintiff asserts that the first thing Beller told him was that the plaintiff was not going to like the VA's findings. Id. at ¶66. Beller told the plaintiff that he should talk less and listen more, and that the plaintiff should know that all EEO complaints at the VA went through Beller. Id. at ¶¶ 66–68. Beller also accused the plaintiff of being frustrated with management. Id. at ¶69. The plaintiff interpreted these four statements—especially the "talk less, listen more" statement—"as a direct threat not to engage in any more protected activities at the VA." Id. at ¶70.

The plaintiff filed a whistleblower retaliation complaint, which he says was heard by the Merit Systems Protection Board. Id. at ¶72. During a meeting

10

of the MSPB, the plaintiff says that Beller admitted he threatened the plaintiff during the June 30, 2015 meeting because Beller was angry about the plaintiff's complaints against the VA. Id. at ¶73. The plaintiff says he didn't receive a copy of "the report in his whistleblower case" until November 10, 2015, after Beller retired; the plaintiff does not describe the "report" to which he refers. Id. at ¶71.

The plaintiff asserts that all of these actions, "as well as the actions identified in [the plaintiff's] companion case, Eastern District of Wisconsin Case No. 2:18-cv-01637, created such a hostile working environment that [the plaintiff] felt intimidated and afraid." Id. at ¶74.

On May 1, 2019, the plaintiff filed this complaint, suing Robert Wilkie, Secretary of the U.S. Department of Veterans Affairs, alleging that the Milwaukee VA violated his rights under the Rehabilitation Act of 1973, 29 U.S.C. §§701 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq. Id. at ¶¶ 1, 75. On August 15, 2019, the defendant moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). Dkt. No. 9. The motion is fully briefed and ready for disposition.

## II.    Motion to Dismiss Standard

Under Fed. R. Civ. P. 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." A Rule 12(b)(6) motion "challenges the sufficiency

11

of the complaint to state a claim upon which relief may be granted." Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7, 570 F.3d 811, 820 (7th Cir. 2009). "To survive a motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" Zemeckis v. Global Credit & Collect. Corp., 679 F.3d 632, 634–35 (7th Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim satisfies this pleading standard when its factual allegations 'raise a right to relief above the speculative level.'" Zemeckis, 679 F.3d at 635 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

Courts engage in a two-step process when analyzing the sufficiency of a complaint. See McCauley v. City of Chi., 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." Id. (citing Iqbal, 556 U.S. at 680–81). Second, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" McCauley, 671 F.3d at 616 (quoting Iqbal, 556 U.S. at 681). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted).

12

### III. Discussion

The defendant asks the court to dismiss the complaint to the extent that it is duplicative of a complaint the plaintiff filed in a prior case, argues that the plaintiff's breach-of-settlement claim is barred by sovereign immunity and asserts that the plaintiff's remaining allegations fail to state a claim upon which relief can be granted.

### A.    Preclusion

This is not the plaintiff's first federal lawsuit against the defendant. On October 15, 2018, the plaintiff sued the defendant for allegedly violating his rights under the Rehabilitation Act of 1973 and Title VII. See McCray v. Wilkie, Case No. 18-cv-1637-DEJ (E.D. Wis.) ("the 2018 case"). That case was pending before Magistrate Judge David Jones when the plaintiff filed the 2019 complaint on May 1, 2019.

In his motion to dismiss, the defendant argues that the complaint in the current case ("the 2019 case") violates the rule against "claim splitting," because the claims in the 2019 case substantially overlap with the claims in the 2018 case. Dkt. No. 10 at 2–5; Dkt. No. 17 at 4–5. He contends that it is a waste of judicial resources to litigate the same allegations twice. The plaintiff concedes that he filed the prior suit but says that the new lawsuit is based on a hostile work environment theory and involves new facts. Dkt. No. 16 at 1.

13

After briefing was completed on the defendant's motion to dismiss the complaint filed in the 2019 case, Judge Jones issued an order dismissing the 2018 complaint, <u>McCray v.</u> Wilkie, Case No. 18-cv-1637 at dkt. no. 27, and entered final judgment, <u>id.</u> at dkt. no. 28. This turn of events raises the question of whether claim preclusion generally—not the sub-doctrine of claim-splitting—requires the court to dismiss the 2019 case.

"Res judicata, or claim preclusion, bars any claims that were litigated or could have been litigated in a previous action when three requirements are met: '(1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits.'" <u>Bell v. Taylor</u>, 827 F.3d 699, 706 (7th Cir. 2016) (quoting <u>Roboserve, Inc. v. Kato Kagaku Co., Ltd.</u>, 121 F.3d 1027, 1034 (7th Cir. 1997)).

### 1. Identity of causes of action

The 2018 complaint alleged violations of the Rehabilitation Act of 1973 (failure to accommodate and retaliation) and of Title VII (based on disability, sex and race discrimination), <u>McCray v. Wilkie</u>, Case No. 18-cv-1637-DEJ at Dkt. No. 1; the 2019 complaint alleges violations of the Rehabilitation Act of 1973(failure to accommodate and retaliation) and of Title VII (discrimination and harassment based on disability, sex and race), <u>McCray v.</u> Wilkie, Case No. 19-cv-638-PP at Dkt. No. 1. Both complaints describe events that occurred during the 2010-2013 period (the 2019 complaint adds events in 2013-2015).

14

Both complaints describe events that occurred during the plaintiff's employment at the Milwaukee VA and that were a result of his employment at the VA.

A side-by-side comparison of the complaints highlights the similarities. The first paragraph of the two complaints is identical, except that the 2019 complaint adds the sentence, "this action is brough to remedy the agency's failure to comply with the terms of a settlement agreement between the parties." Dkt. No. 1 at ¶1. The next forty-six paragraphs are identical in both complaints.[1] They diverge at paragraph 48—the 2018 complaint describes, in paragraphs 28-74, incidents between July 12, 2012 and 2014 regarding the VA's failure to accommodate the plaintiff regarding a van he drove as part of his job and a September 2013 interaction between him and an apprentice peer counselor named Doug Kiger. McCray v. Wilkie, 18-cv-1637 at Dkt. No. 1, ¶¶28-74. Paragraph 48 of the 2019 complaint simply asserts that the plaintiff was subjected to a hostile work environment by the events in the following paragraphs. Paragraphs 49-51 of the 2019 complaint are identical to paragraphs 75-77 of the 2018 complaint. The complaints then diverge again. The 2018 complaint describes events in the fall of 2013, when the plaintiff

---

[1] The court suspects that the 2019 complaint's reference to the "incident with Kiger"—an incident not described in the 2019 complaint—is the result of the plaintiff having cut and pasted significant portions of the 2018 complaint into the 2019 complaint; the 2018 complaint *does* describe the incident with Kiger.

Case 2:19-cv-00638-PP   Filed 08/10/20   Page 15 of 26   Document 22

asked for reassignment and time off work and for an office move, but was denied; it also alleges that management "made negative comments" about him. McCray v. Wilkie, 18-cv-1637 at Dkt. No. 1, ¶¶79-86. The 2019 complaint discusses the events between November 2014 and June 2015 related to the plaintiff's reduced performance ratings, the withdrawal of the accommodation allowing him to miss meetings and his interactions with Beller. McCray v. Wilkie, 19-cv-638 at Dkt. No. 1, ¶¶52-74

The 2018 "Violations of Law" section states:

Defendant Robert Wilkie, Secretary of the Department of Veterans Affairs, acted without regard to [the plaintiff's] rights as guaranteed under the Rehabilitation Act of 1973, and Title VII of the Civil Rights Act of 1964, by, among other acts, discriminating against [the plaintiff] in the terms and conditions of employment, by failing to provide reasonable accommodates for known disabilities, by failing to engage in an interactive process with [the plaintiff] regarding his disabilities, by allowing discrimination and harassment on the basis of his disabilities, sex, and race and engaging in retaliation against [the plaintiff] based on his complaints regarding discrimination on the basis of his disabilities, race and sex all in violation of the applicable law.

McCray v. Wilkie, 18-cv-1637 at Dkt. No. 1, ¶87.

The 2019 "Violations of Law" section states:

Defendant Robert Wilkie, Secretary of the Department of Veterans Affairs, acted without regard to [the plaintiff's] rights as guaranteed under the Rehabilitation Act of 1973, and Title VII of the Civil Rights Act of 1964, by, among other acts, discriminating against [the plaintiff] in the terms and conditions of employment, by failing to provide reasonable accommodations for known disabilities, by failing to engage in an interactive process with [the plaintiff] regarding his disabilities, by allowing discrimination and

16

harassment on the basis of his disabilities, sex, and race and engaging in retaliation against [the plaintiff] based on his complaints regarding discrimination on the basis of his disabilities, race and sex all in violation of the applicable law; [the plaintiff's] rights were further violated when the [VA] failed to comply with the terms of a settlement agreement between the parties.

McCray v. Wilkie, 19-cv-638 at Dkt. No. 1, ¶75.

Given that the complaints do differ in some respects, despite overwhelming similarities, the court must ask whether the two suits involve the same claim. "In order to decide whether . . . two cases involve the same claim, we ask whether they arise out of the same transaction. If they did, whether or not they were actually raised in the earlier lawsuit, they may not be asserted in the second or subsequent proceeding." Ross, 486 F.3d at 283.

Usually [the same transaction] means all losses arising from the same essential factual allegations (sometimes called a common core of facts), see *Matrix IV, Inc. v. American National Bank & Trust Co.*, 649 F.3d 539, 548 (7th Cir. 2011), though the American Law Institute has resisted the idea that the inquiry can be reduced to a formula. See *Restatement* § 24. See also *Currier v. Virginia*, __ U.S. ___, 138 S. Ct. 2144, 2154 . . . (2018) ("In civil cases, a claim generally may not be tried if it arises out of the same transaction or common nucleus of operative facts as another already tried.")

Horia v. Nationwide Credit & Collection, Inc., 944 F.3d 970, 973-74 (7th Cir. 2019).

Both the 2018 and 2019 complaints allege that between 2011 and 2015, employees at the VA discriminated against the plaintiff based on his sex, race and disabilities and retaliated against him for complaining about that

17

discrimination. Each complaint describes identical incidents, and each complaint describes separate incidents. But all of the facts the plaintiff alleges—save one—arise out of his employment at the VA and his allegations that the staff there discriminated against him based on his sex, race and disabilities, failed to accommodate his disabilities and retaliated against him when he complained. Some of the events in the two complaints are not contemporaneous, but "the fact that some of the events 'occurred at different times is not sufficient to find that they did not arise out of the same set of operative facts.'" Huon v. Johnson & Bell, Ltd., 757 F.3d 556, 559 (7th Cir. 2014) (quoting Lane v. Kalcheim, 915 N.E.2d 93, 101 (2009)).

Further, both complaints describe events that occurred years before the plaintiff filed either the 2018 or the 2019 complaints. "Claim preclusion applies to all matters that were litigated or *could have been litigated* between the same parties or their privies." Veit v. Frater, 715 F. App'x 524, 527 (7th Cir. 2017) (citing Wis. Pub. Serv. Corp. v. Arby Constr., Inc., 818 N.W.2d 863, 970 (2012); Menard, Inc. v. Liteway Lighting Prods., 698 N.W.2d 738, 745 (2005)) (emphasis added). The plaintiff could have raised all the claims he raised in the 2019 complaint in the 2018 complaint. He filed the 2019 complaint seven months after filing the complaint in the 2018 case; perhaps not coincidentally, he filed the 2019 complaint while the parties were briefing the defendant's motion to dismiss the 2018 complaint.

18

There is an identity of causes of action.

        2.      Identity of parties or their privies

The plaintiff in both cases is Scott McCray and the defendant in both cases is Robert Wilkie. There is an identity of parties.

        3.      A final judgment on the merits

Judge Jones dismissed the 2018 complaint for failure to exhaust administrative remedies and failure to state a claim and determined that amending the complaint would be futile—a merits-based determination. McCray v. Wilkie, Case No. 18-cv-1637-DEJ, Dkt. No. 27. He entered final judgment in the 2018 case on September 30, 2019. Id. at Dkt. No. 28. The plaintiff filed a notice of appeal on October 29, 2020, id. at dkt. no. 30, but "the fact that an appeal was lodged does not defeat the finality of the judgment," Ross *ex rel.* Ross v. Bd. of Educ. of Tp. High School. Dist. 211, 486 F.3d 279, 284 (7th Cir. 2007) (citing 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure §4433 at 78-79 & n.11 (2d ed. 2002)). There is a final judgment on the merits.

The Rehabilitation Act and Title VII claims in the 2019 complaint are barred by claim preclusion.[2]

_____

[2] The defendant argued in his brief that the complaint failed to state a claim for a hostile work environment. Dkt. No. 10 at 7-12. The court will not address the substance of those claims, given its conclusion that these claims are precluded because they could have been raised in the 2018 complaint.

B.   The breach-of-settlement claim

The one claim that the plaintiff did not raise in the 2018 complaint is his claim that the VA breached the settlement agreement resolving his first EEO complaint when it failed to promote him to a GS-12 position. Dkt. No. 1 at ¶¶1, 32-47, 75.

To characterize the allegations regarding this claim as sparse would be generous. At ¶32, the plaintiff alleges that "[a]s part of the settlement of that first discrimination complaint in February 2012, Mental Health Division Manager Dr. Richard Gibson promised McCray a promotion to a position at GS-12 level." Dkt. No. at 1 ¶32. This is the first time the plaintiff mentions that the first EEO complaint was settled. He does not indicate if there is a written settlement agreement or what it said. He makes no other mention of settlement or a settlement agreement anywhere in the complaint, other than to assert that the VA breached the agreement. He alleges only that he did not get promoted to GS-12 because Williams used the GS-11 job description.

It appears that it may not have been the plaintiff's idea to bring the breach-of-contract claim. In his opposition brief to the motion to dismiss, the plaintiff makes the cryptic assertion that "if this court adopts the reasoning of the fifth circuit, unless the Defendant waives sovereign immunity, if the court deems sovereign immunity applies here, Plaintiff might not be able to pursue the breach of settlement claim, which was added by the EEOC. (Pl. Decl. ¶ 11.)"

20

Dkt. No. 16 at 3. Attached to the opposition brief is the plaintiff's declaration,[3] which states at paragraph 11:

> As it pertains to breach of settlement, a term of promotion was taken out of the agreement by the EEO Counselor after it was approved of in mediation. He was not authorized to take this action which resulted in me not being promoted to the GS 12 level as promised. I have suffered severe monetary loss to include retirement benefits, annual raises and the Federal Th[ri]ft Savings Plan (TSP). I personally never filed any breach of settlement claim. The EEOC made this determination. My complaint was not being promoted due to retaliation for protected activity. Not from any breach. This cause of action was added by the EEOC to my complaint.

Dkt. No. 16-1 at ¶11.

If the court is reading this paragraph correctly, the plaintiff says that it was the EEOC, not the plaintiff, who asserted the breach of contract claim. More to the point, the plaintiff appears to be saying that the reason he did not get the promotion was *not* because the defendant breached any settlement agreement, but because the *EEO counselor* removed from the agreement a condition upon which the parties had agreed.

---

[3] Fed. R. Civ. P. 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The court has not considered the contents of the declaration in ruling on the substance of the plaintiff's claims and will not convert the motion to dismiss into a motion for summary judgment; it quotes the one paragraph in the declaration only to note that the plaintiff may never have intended to bring the breach-of-settlement-agreement claim.

21

Even if the plaintiff meant to assert a breach-of-contract claim, he has not alleged an agreement between the parties that created obligations from the defendant (Wilkie) to the plaintiff, the defendant's failure to fulfill those obligations and damages flowing from the breach. Reno v. Allstate Property and Cas. Ins. Co., No. 19-cv-387-jdp, 2020 WL 3799162, at *3 (W.D. Wis. July 7, 2020). "As part of the settlement" implies that there was an agreement but does not identify the parties, date, consideration or other details; the allegation that Gibson promised a promotion implies an obligation from Gibson to the plaintiff; the fact that the plaintiff did not get that promotion implies a breach. The complaint does not allege any damages flowing from the alleged breach—the plaintiff says only that getting an "excellent" rating instead of an "outstanding" rating impacts an employee's pay and promotion opportunities. The complaint does not describe how he was damaged by failing to be promoted to GS-12. The court questions whether the complaint states a claim.

The plaintiff also could have brought this claim in the 2018 complaint. It is not clear whether the *settlement* occurred in February 2012 or *Gibson promised the plaintiff a promotion* in 2012, and the plaintiff does not specify the date on which he was denied the GS-12 promotion. But paragraphs 32 through 46 of the 2018 complaint recount the same facts about the settlement agreement and the failure to promote him that the plaintiff recounted in the 2019 complaint.

The plaintiff appears to have "split" his claims involving these facts, asserting in the 2018 complaint that the facts constituted discrimination and asserting in the 2019 complaint that the constituted discrimination and breach of contract.

> The doctrine of claim splitting is "related to, but distinct from, the doctrine of claim preclusion." *Roumann Consulting, Inc. v. Symbiont Construction, Inc.*, Case No. 18-C-1551, 2019 WL 3501527, at *6 (E.D. Wis. Aug. 1, 2019). While both doctrines serve to promote judicial economy and shield parties from vexatious litigation, "claim splitting is more concerned with the district court's comprehensive management of its docket, whereas claim preclusion focuses on protecting the finality of judgments." *Id.* Notwithstanding these differences, claim splitting draws on the law of claim preclusion when determining whether the second lawsuit should be dismissed. Claim preclusion applies where there is an identity of the parties in the two suits; (2) a final judgment on the merits in the first; and (3) an identity of the causes of action. *Barr v. d. of Trustees of W. Illinois Univ.*, 796 F.3d 837, 840 (7th Cir. 2015).

<u>Scholz v. United States</u>, Case No. 19-cv-1074, 2020 WL 3051565, at *2 (E.D. Wis. June 8, 2020).

The court already has found that there is an identity of parties between the two suits. There has been a final judgment in the first suit. And although the plaintiff did not allege breach of contract in the 2018 suit, there is identity of causes of action. "It is immaterial whether the claims are based on different legal theories; the 'two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations.'" <u>Id.</u> (quoting

23

Herrmann v. Cencom Cable Assocs., 999 F.2d 223, 226 (7th Cir. 1993)). The claims in the 2018 and 2019 suits arise from the same set of operative facts.

Rather than argue that the plaintiff did not intend to bring this claim, or that he has failed to state a claim for breach of contract, or that the breach-of-contract claim is barred by claim preclusion or the doctrine of claim-splitting, the defendant asserts that the breach-of-contract claim is barred by the doctrine of sovereign immunity. Dkt. No. 10 at 5-7. The defendant says that courts presented with a breach-of-settlement-agreement claim against the federal government under Title VII have "overwhelmingly" concluded that such claims are barred by sovereign immunity and cites seven cases from other districts and circuits in support. Dkt. No. 10 at 6-7.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." Michigan v. U.S. Army Corps of Engineers, 667 F.3d 765, 774 (7th Cir. 2011) (quoting FDIC v. Meyer, 510 U.S. 471, (1994)). This means that the United States "cannot be sued unless it gives express consent to the jurisdiction of the court in which it is sued." Dawson v. Great Lakes Educ. Loan Serv's, Inc., No. 15-cv-475, 2016 WL 426610, at *3 (W.D. Wis., Feb. 3, 2016) (citing Hercules, Inc. v United States, 516 U.S. 417, 422 (1996)).

> It is the plaintiff's burden to demonstrate that the federal government has waived it sovereign immunity and consented to sued. Macklin v. United States, 300 F.3d 814, 819 (7th Cir. 2002);

24

Welch v. United States, 409 F.3d 646, 650-51 (4th Cir. 2005); Stockman v. Federal Election Commission, 138 F.3d 144, 151 (5th Cir. 1998). All purported waivers of sovereign immunity must be "strictly construed, in terms of [their] cope, in favor of the sovereign." Lane v. Pena, 518 U.S. 187, 192 (1996). If the plaintiff fails to meet [his] burden of establishing that the federal government waived its sovereign immunity, the case must be dismissed. Macklin, 300 F.3d at 819.

In order to carry [his] burden of establishing that the federal government has consented to be sued, plaintiff must identify a federal statute in which "Congress has expressly and unequivocally waived [its] sovereign immunity." Barnes v. United States, 199 F.3d 386, 388 (th[h] Cir. 1999).

Id.

The complaint does not allege that the government has waived its sovereign immunity in the context of employment discrimination settlement agreements, and the plaintiff has not identified any statute expressing an intent to waive immunity in the context of employment discrimination settlement agreements. As noted above, the plaintiff responded to the sovereign immunity argument by asserting that "if this court adopts the reasoning of the fifth circuit, unless the Defendant waives sovereign immunity, if the court deems sovereign immunity applies here, Plaintiff might not be able to pursue the breach of settlement claim, which was added by the EEOC. (Pl. Decl. ¶ 11.)" Dkt. No. 16 at 3. The reference to the Fifth Circuit appears to relate to a case the defendant cited in a footnote of his brief in support of the motion to dismiss, Charles v. McHugh, 613 Fed. App'x 330, 335 (5th Cir. 2015) (cited at

25

Dkt. No. 10, p. 6 n.3). In <u>Charles</u>, the Fifth Circuit held that "the EEOC does not have the authority to waive sovereign immunity through its regulations." <u>Id.</u>

The court agrees that it must dismiss the breach-of-contract claim—because the complaint fails to allege the elements of such a claim, because the claim is barred by claim preclusion and because it is barred by sovereign immunity.

## IV.    Conclusion

The court **GRANTS** the defendant's motion to dismiss. Dkt. No. 9.

The court **ORDERS** that this case is **DISMISSED** and will enter judgment accordingly.

Dated in Milwaukee, Wisconsin, this 10th day of August, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

26